Carrie LeRoy (SBN #209706)
17774 Old Summit Rd.
Los Gatos, CA 95033
Telephone: (650) 630-4379
Email: carrie.leroy@aol.com

Pro Bono Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MERY CAMILA CAHUENAS SILVA,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of the United States Department of Homeland Security; TODD BLANCHE, Attorney General of the United States; DAVID VENTURELLA, Director of United States Immigration and Customs Enforcement; FERETI SEMAIA; Warden, Adelanto ICE Processing Center; ERNESTO SANTACRUZ, Acting Field Office Director of the Los Angeles Immigration and Customs Enforcement Office, in their official capacities,<br><br>Respondents. | Case No.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>**Verified Petition**<br><br>**A#: 235-035-079** |

"The freedom to live fearlessly, the opportunity of liberty, and the American dream. That is all Plaintiffs seek. Instead, they are told to atone for their race, leave because of their names, and purify their blood. The Court disagrees."[1] – The Honorable Trina L. Thompson

"[I]f the APA's mandate of genuine, non-arbitrary decision-making means anything, it surely means that an agency cannot openly express stereotype-based animus toward a group of immigrants from certain countries and a predetermined intent to sweep away their protections, and then expect a court to blindly accept a post hoc rationalization that its decision was actually the product of a technical administrative concern. We as the judiciary should not pretend to be blind to what the American public can easily observe for themselves."[2]—The Honorable Salvador Mendoza, Jr.

## INTRODUCTION

1. In violation of the Due Process Clause to the Fifth Amendment, the Fourth Amendment to the U.S. Constitution, the Immigration and Nationality Act ("INA") and Administrative Procedure Act ("APA"), Mery Camila Cahuenas Silva ("Petitioner") is being unlawfully detained by Respondents at the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center ("Adelanto"), which is in the Central District of California. Petitioner respectfully seeks through this Petition for Writ of Habeas Corpus (the "Petition") her immediate release from detention by Respondents and the prohibition of her re-arrest without notice and a

[1] *Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1008, 1015 (N.D. Cal. 2025) (granting motion to postpone date of agency action terminating temporary protected status).
[2] *National TPS All. v. Noem*, 166 F.4th 739, 753 (9th Cir. 2026), *rehearing en banc denied*, 169 F. 4th 796 (9th Cir. 2026) (Mendoza, S., concurring).

pre-deprivation hearing to contest such arrest before a neutral decisionmaker.[3]

2. Since approximately September 22, 2026, Petitioner has been detained at the Adelanto. LeRoy Decl. ¶ 3.

3. Petitioner was detained on September 22, 2026 at the Los Angeles International Airport as she exited the plane with her U.S.-citizen fiancé, after visiting her fiancé's parents in Las Vegas, Nevada. LeRoy Decl. ¶ 3. She has been detained since that date.

4. Petitioner flew to the United States legally from Ecuador on August 18, 2021, on a valid tourist visa. Exh. A; LeRoy Decl. ¶ 4. She was inspected by immigration officials in Miami on August 18, 2021, who then necessarily determined that she was not a flight risk, national security threat or threat to others. *Id*.

5. Petitioner applied for asylum on September 12, 2024. Exh. B; LeRoy Decl. ¶ 5. Her asylum application is pending. *Id*.

6. On October 20, 2026, an immigration judge summarily denied Petitioner's release from detention on bond, checking a box on a form court order designating her a "flight risk." Exh. C; LeRoy Decl. ¶ 6. Petitioner believes that the

[3] Facts asserted in this Petition for Writ of Habeas Corpus are drawn from the attached declaration of Carrie LeRoy, counsel for Petitioner, and from exhibits to that declaration. Further citation will be made directly to the individual exhibits attached to the declaration, or to the declaration itself, hereinafter "LeRoy Decl."

immigration judge had decided to deny her release on bond before the hearing, regardless of the evidence that she presented and that she was expected at the bond hearing to prove that she is not a flight risk. *Id*. She has never before heard from ICE that she was a flight risk and does not believe that there was any basis for such a finding. LeRoy Decl. ¶¶ 11, 12, 13.

7. Petitioner lives in Anaheim, California with her U.S.-citizen fiancé. LeRoy Decl. ¶ 7.

8. Although Ms. Cahuenas has a college degree in architecture in Ecuador, she was training to become a Pilates instructor in the U.S. LeRoy Decl. ¶ 8.

9. She and her U.S.-citizen fiancé also formed a company so that, in the future, she could work as a professional interior designer. LeRoy Decl. ¶ 9.

10. On September 22, 2026, Ms. Cahuenas, along with her U.S.-citizen fiancé, was exiting the airplane boarding ramp at Los Angeles International Airport when she was surrounded by four masked men in civilian clothes who called out her name. LeRoy Decl. ¶ 10. They told her that they had decided to expedite her asylum case. *Id*. They did not show identification, or produce a warrant, but they confiscated Ms. Cahuenas' documents and phone. *Id*. They loaded her into a van, put handcuffs on her hands and feet, drove her to the Los Angeles ICE office, and then to Adelanto ICE processing center where she remains detained. *Id*.

11. Petitioner was shocked that she was detained without notice or cause while her asylum application is still pending, while she has been in the U.S for almost 5 years. LeRoy Decl. ¶ 11.

12. Petitioner is not a flight risk. In the almost five years that she has been in the United States, Petitioner has never been required to post bond, attend any check-in appointments with ICE, and was not required to wear or carry any type of electronic monitoring device. LeRoy Decl. ¶ 12. At no time did ICE previously notify Petitioner that she was a flight risk or had immigration law compliance issues. *Id.* ICE has known about Petitioner's whereabouts, including her home address, since she filed her asylum application in 2024. *Id.*

13. Petitioner has never been arrested for, charged with, or otherwise accused of a crime. Petitioner has not received any notice from DHS or otherwise suggesting that she has committed any crimes or presented a threat to others or flight risk. LeRoy Decl. ¶ 13.

14. Petitioner is experiencing extreme hardship as result of her detention at Adelanto. She is suffering from migraines and is distraught over the sudden loss of her freedom without explanation. LeRoy Decl. ¶ 14. Petitioner has strong community ties and support. Exh. D.

15. There were no changed circumstances in Petitioner's case to explain or warrant her arrest and detention. Petitioner appears to have been targeted based on

her Latino ethnicity without individualized suspicion that she had engaged in any unlawful conduct—the definition of arbitrary government action that serves no legitimate governmental purpose.

16. The *only* legitimate interests that civil immigration detention serves are mitigating flight risk and preventing danger to the community. When those interests are absent, the Fifth Amendment's Due Process Clause squarely prohibits detention. Additionally, by summarily arresting and detaining Petitioner without a pre-deprivation hearing or any process whatsoever, Respondents violated Petitioner's right to procedural due process. The unconstitutional deprivation of "physical liberty" "unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017). Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

17. In addition, Petitioner's arrest by ICE without a warrant or reasonable suspicion that she was engaging in unlawful conduct violated the Fourth Amendment. In placing someone under arrest without a warrant, an immigration officer must have probable cause that a person is "likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995); *see also B.D.A.A. v Bostock*, No. 25-2062,

2025 U.S. Dist. LEXIS 250425, 2025 WL 3484912, at *7 (D. Or. Dec. 4, 2025). A traffic stop must be supported by at least reasonable suspicion. *See Kansas v Glover*, 589 U.S. 376, 380 (2020). To justify a stop, "[a]n officer cannot rely only upon generalizations that would cast suspicion on large segments of the law-abiding population." *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006). The Supreme Court held that these requirements apply in the immigration context, when officers seek to enforce the INA. See *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). *Brignoni-Ponce* held that the mere belief that a person is of Mexican descent, is sufficient to "justify neither a reasonable belief that they were aliens, nor a reasonable belief that the car concealed other aliens who were illegally in the country." *Id.* at 886. There was no probable cause, reasonable suspicion or other constitutionally sufficient basis for stopping and arresting Petitioner without a warrant at the Los Angeles International Airport on September 22, 2026.

18. Respondents further violated Petitioner's rights under 8 U.S.C. §1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) prohibiting warrantless arrests without reason to believe an individual is a flight risk. When arresting Petitioner, no warrant was shown to Petitioner and there was no basis to conclude that she presented a flight risk. LeRoy Decl. ¶ ¶ 10-13.

19. All individuals within the United States have constitutional rights. "[T]he Due Process Clause applies to all 'persons' within the United States,

including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.A. 678, 693 (2001). Petitioner was arbitrarily taken by ICE from the Los Angeles International Airport without notice, a warrant or any pre-detention process whatsoever—or explanation for the basis of her arrest, other than that ICE had suddenly and arbitrarily decided to "expedite" her asylum case. LeRoy Decl. ¶ 10. There was no individualized suspicion for Petitioner's arrest.

20. If Respondents may simply arrest and detain a noncitizen without notice or cause or any kind of pre-detention process on the basis of their appearance as Latinos, Respondents would be incentivized to trample on the due process rights of all non-citizens in order to meet their publicly announced deportation quotas. Accordingly, Petitioner seeks a writ of habeas corpus requiring that Petitioner be immediately released from her unlawful detention.

21. To maintain this Court's jurisdiction, the Court should also prohibit Respondents from transferring Petitioner out of this District and removing her from the country until these proceedings have concluded.

## JURISDICTION AND VENUE

22. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1651 (All Writs Act), 28 U.S.C. §§ 2201–02 (Declaratory Judgment Act), 28 U.S.C. § 2241 (habeas corpus), Article I, § 9, cl. 2 of the U.S. Constitution (the Suspension Clause), the Fifth Amendment to the U.S.

Constitution, and 5 U.S.C. §§ 701-706 (Administrative Procedure Act).

23. Venue is proper in this District and division pursuant to 28 U.S.C. § 2241(a) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner is physically detained within this District. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 78, 484, 493- 500 (1973). Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California.

## <u>REQUIREMENTS OF 28 U.S.C. § 2243</u>

24. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id*. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 20 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

25. Petitioner is an Ecuadorian asylum seeker currently held at Adelanto.

26. Respondent Markwayne Mullin is responsible for the implementation and enforcement of the INA and oversees ICE, which is responsible for Petitioners' detention. Respondent Mullin has ultimate custodial authority over Petitioner. Mr. Mullin is sued in his official capacity.

27. Respondent David Venturella is the acting director of ICE who is responsible for operating the immigration detention system, including the incarceration of Petitioner at Adelanto. ICE and Mr. Venturella are Petitioner's immediate custodian responsible for Petitioner's detention. Mr. Venturella is sued in his official capacity.

28. Respondent Todd Blanche is the Attorney General of the United States. He is responsible for the Department of Justice ("DOJ"), of which the Board of Immigration Appeals ("BIA"), Executive Office for Immigration Review ("EOIR") and immigration court system it operates, is a component agency. He is sued in his official capacity.

29. Respondent Fereti Semaia, Warden of Adelanto, is affiliated with ICE and responsible for Adelanto, where Petitioner is unlawfully detained. He is sued in his official capacity.

## EXHAUSTION

30. To the extent that Respondents contend that Petitioner has failed to exhaust her administrative remedies, the relevant law and facts do not support this contention. Petitioner asserts that exhaustion should be waived because administrative remedies are futile and her continued detention results in irreparable harm. There is no requirement to exhaust administrative remedies because no other forum exists in which Petitioner can raise the claims herein. *See Reno v Amer.-Arab Anti-Discrim. Comm.*, 525 U.S. 471 (1999) (finding exhaustion to be a "futile exercise because the agency does not have jurisdiction to review" constitutional claims); *Legalization Assistance Project v. INS,* 976 F.2d 1198, 1203 (9th Cir. 1992) (where the administrative forum would 'provide no real opportunity to present' the constitutional issues …, requiring exhaustion 'makes little sense.'") (citation omitted). There is no statutory exhaustion requirement prior to challenging the constitutionality of an arrest or detention. *Wang v. Reno*, 81 F.3d 808, 814 (9th Cir. 1996) ("Where Congress has not specifically mandated exhaustion, we conclude that consistent with congressional intent and the INA, the district court properly exercised jurisdiction over [petitioner's] due process claim even though he had not exhausted administrative remedies with respect to his excludability."). Only an order of this Court could effectively grant Petitioner relief.

31. Prudential exhaustion is not required here because it would be futile,

and Petitioner will "suffer irreparable harm if unable to secure immediate judicial consideration of [their] claim." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992). A court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft,* 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted); *Mosqueda v. Noem,* No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530, at *7 (C.D. Cal. Sept. 8, 2025).

32. Crucially, any requirement of exhaustion in immigration court is not appropriate in Petitioner's case because a *post*-detention hearing is not the appropriate remedy for the egregious violation of her Fifth Amendment rights. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring pre-deprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency."). There is no "extraordinary situation" or valid "governmental interest" to justify Respondents' arbitrary arrest and detention of Petitioner without any pre-detention process.

33. Under the Due Process Clause, Petitioner was owed *some* pre-

detention process prior to September 22, 2026. Instead, she was arbitrarily arrested without notice, cause or any pre-detention process whatsoever. LeRoy Decl. ¶¶ 11, 12, 13. Accordingly, there is no exhaustion requirement, and Petitioner properly seeks immediate release to remedy the constitutional and statutory violations that resulted in her unlawful arrest and detention on September 22, 2026.

34. Because Petitioner was detained without notice or a pre-deprivation hearing in violation of the Due Process Clause and Fourth Amendment, her detention is unlawful and she should be ordered immediately released and the parties returned to the status quo prior to the date on which Petitioner's unlawful detention commenced. The Ninth Circuit defines the status quo as "the last uncontested status preceding the lawsuit." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1191 (9th Cir. 2024). That would in this case require Petitioner's unconditional release from Adelanto.

35. Furthermore, it is evident from the record that the post-deprivation process afforded Petitioner was defective. At a 1226(a) bond hearing for Petitioner, the immigration judge ("IJ") appears to have improperly denied Petitioner release on bond on the basis of her immigration status, without reference to the burden of proof on Respondents and without citing any specific evidence of flight risk in the order denying release on bond. *See* Exh. C, "Order of the Immigration Judge" dated October 20, 2026 (the "Order"). The decision to deny Petitioner release on

bond appears to have been preordained. LeRoy Decl. ¶ 6.

36. At a bond hearing that may result in the deprivation of liberty, the government must be held to a "clear and convincing burden of showing that Petitioner was a flight risk." *Melchor-Melchor v. Noem*, No. 5:26-CV-00766-2026 WL 760058, at *1 (C.D. Cal. Mar. 16, 2026); see also *Singh v. Holder*, 638 F.3d 1196, 1200, 1205 (9th Cir. 2011) ("the burden of establishing whether detention is justified falls on the government . . . the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond"); *Garcia Mariagua v. Chestnut*, No. 1:25-cv-1744 DJC CKD P (C. D. Cal. February 26, 2026), at *2 (granting habeas petition and ordering that government has a clear and convincing burden in subsequent hearings), *De La Garza v. Albarran*, No. 25-cv-10305-HSG (N. D. Cal. December 22, 2025) at *3, (granting habeas petition and ordering that government has a clear and convincing burden in a subsequent hearing, noting that the Ninth Circuit's holding in Singh "still appears binding."). As another court in this District considering a similar defective bond hearing and concluded, "[s]uch a failure to apply the correct legal standard constitutes an abuse of discretion by the IJ." *Mendoza v. Noem*, No. CV 25-3227-MWF-AGR, WL 923311, at *4 (C.D. Cal. April 1, 2026), Dkt.28 at 7-8 (ordering the immediate release of a petitioner who was subjected to constitutionally deficient bond hearing).

37. Given the current administration's documented anti-immigrant policy, including its purge of immigration judges who do not follow DHS's enforcement and deportation agenda, and its other actions to turn the immigration court system into an extension of DHS's deportation machine, exhaustion should be waived.

38. In the current political environment, the courts have increasingly waived exhaustion in reviewing immigration bond denial decisions. See *Hasratyan v. Bondi,* 2026 WL 288909 at *3-4 (C.D. Cal. Feb. 2, 2026) (concluding that due process and procedural errors in the conduct of petitioner's bond hearing before an IJ warranted her immediate release); *Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1127 (S.D. Cal. 2008) ("(t)he evidence before the IJ failed, as a matter of law, to prove flight risk or danger."); *Mendoza v. Noem*, No. CV 25-3227-MWF-AGR, 2026 WL 923311, at *3-4 (C.D. Cal. Apr. 1, 2026) (ordering the release of an Immigration and Customs Enforcement detainee where the court found that the IJ abused his discretion by determining that the detainee was a flight risk on the basis of her immigration status alone); *Villa v. Mullin*, No. 5:26-cv-01690-JDE, 2026 WL 1583941, at *4 (C.D. Cal. June 2, 2026) (waiving exhaustion and reviewing an immigration court bond denial for legal error); *Rodriguez Cabrera v. Mattos,* 808 F. Supp. 3d 1159, 1176 (D. Nev. 2025) ("[R]equiring Petitioner to be subjected to unlawful detention pending the BIA's decision would cause irreparable harm"); *Haiguang Zheng v. Rokosky*, 2026 WL 800203 (D.N.J. Mar. 23, 2026) (ordering

the immediate release of a detainee following a constitutionally deficient bond hearing in immigration court, explaining that "the Court cannot ignore that the circumstances surrounding these proceedings raise substantial concerns as to whether any non-citizen can receive the impartial hearing that due process requires."); *Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 U.S. Dist. LEXIS 85165, *8 (S.D. Cal. April 16, 2026) (same, explaining "[a]s to futility, Petitioner points to evidence that the BIA has been drastically reshaped within the past year, such that the BIA now functions to rubberstamp IJ bond denials and facilitate noncitizen removal."). As the court in *Mubanga v. Mullin*, No. 26-CV-02565-JO-AHG, 2026 U.S. Dist. LEXIS 148785, 2026 WL 1945743, at *3 (S.D. Cal. July 6, 2026) recently explained,

> While this Court has previously ordered bond hearings in prolonged detention cases, it finds that recent developments in the immigration court system have rendered a bond hearing an inadequate remedy in this case. Numerous courts in this circuit—including this one—have ruled that immigration judges in recent months failed to comply with habeas courts' orders to provide noncitizens with constitutionally adequate bond hearings. As one sister court observed, '[t]he mounting evidence that bond determination hearings conducted in Immigration Court . . . have preordained outcomes has become impossible to ignore.' (citing *Singh v. Valdez*, No. 26-CV-1109-WJM, 2026 U.S. Dist. LEXIS 71846, 2026 WL 890240, at *5 (D. Colo. Apr. 1, 2026).

## LEGAL BACKGROUND

### A. Due Process Violations

39. The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Zadvydas*, 533 U.S. at 693). Noncitizens living in the United States like Petitioner have a protected liberty interest in their ongoing freedom from confinement. *See Zadvydas*, 533 U.S. at 690; *see also Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) ("absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process."). Due process rights are both substantive and procedural.

40. First¸ "[t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), including "the exercise of power without any reasonable justification in the service of a legitimate government objective," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

41. These protections extend to noncitizens facing detention, as "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Accordingly, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Substantive due process thus requires that all

forms of civil detention—including immigration detention—bear a "reasonable relation" to a non-punitive purpose. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972). The Supreme Court has recognized only two permissible non-punitive purposes for immigration detention: ensuring a noncitizen's appearance at immigration proceedings and preventing danger to the community. *Zadvydas*, 533 U.S. at 690–92; *see also Demore v. Kim*, 538 U.S. 510 at 519–20, 527–28, 31 (2003).

42. Second, the procedural component of the Due Process Clause prohibits the government from imposing even permissible physical restraints without adequate procedural safeguards. Generally, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). This is so even in cases where that freedom is lawfully revocable. *See Hurd v. D.C., Gov't*, 864 F.3d at 683 (citing *Young v. Harper*, 520 U.S. 143, 152 (1997) (re-detention after pre-parole conditional supervision requires pre-deprivation hearing)); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471 (1972) (same, in parole context).

43. Under the weight of authority in this District and throughout the Ninth Circuit, Respondents' arrest and detention of Petitioner violated her rights under the Due Process Clause because of the liberty interest created during the nearly five years that Petitioner lived freely and lawfully in the United States with and where,

*even upon expiration* of her visa, ICE had never detained her, when they have known of her whereabouts since at least September 12, 2024. LeRoy Decl. ¶ 5. Although Petitioner's visa previously expired, Respondents did not detain her—they waited until September 22, 2026 to arrest and detain her through a race-based airport ambush without any pre-detention process whatsoever. LeRoy Decl. ¶ 10.

44. Similar to parole, the government's knowing decision *not* to detain an individual creates a liberty interest in her continued freedom from detention. *See Boso v. Warden of the Golden State Annex Det. Facility*, No. 1:26-cv-01790-KES-SAB-HC, 2026 U.S. Dist. LEXIS 95445, 2026 WL 1174643 (E.D. Cal. Apr. 30, 2026), *report and recommendation adopted,* 2026 U.S. Dist. LEXIS 109349, 2026 WL 1389432 (E.D. Cal. May 18, 2026). *Boso* states in pertinent part:

> To the extent that Petitioner has not previously been detained by immigration officials and released, the Court finds the reasoning of *Kharitonova v. Albarran*, No. 3:26-CV-01362-JSC, 2026 U.S. Dist. LEXIS 39213, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026), persuasive. *Kharitonova* concerned a noncitizen who entered the United States on a nonimmigrant visa in 2012, filed her application for asylum and withholding of removal within one year of her arrival, had her asylum case referred to the Executive Office for Immigration Review, which issued a Notice to Appear, resided continuously in the United States, attended all scheduled hearings, was preparing to appear for her merits hearing scheduled for December 22, 2026, and in February 2026 'was detained on the street in front of the home in San Francisco where she work[ed] as a full-time nanny.' 2026 U.S. Dist. LEXIS 39213, [WL] at *1.

The district court held that the "government's decision not to detain Petitioner 'when it processed her asylum application, took her biometrics, referred her asylum

case to EOIR, and advised her to appear for multiple hearings over a period of years,' ... gave rise to 'a liberty interest on Petitioner's part that she would remain free unless she violated her conditions of release.'" 2026 U.S. Dist. LEXIS 39213, at *2 (citation omitted). The court rejected the "government's insistence Petitioner lacks a liberty interest because it never before sought to detain her" as "specious" and "unsupported by any legal authority" because "[a]lthough the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained." *Kharitonova*, 2026 U.S. Dist. LEXIS 39213, 2026 WL 531441, at *2; *see also Villanueva-Montanez v. Lyons*, No. 2:26-cv-00954-DAD-CKD, 2026 U.S. Dist. LEXIS 60931, 2026 WL 797930, at *1 (E.D. Cal. Mar. 23, 2026) ("[T]he release (or decision not to detain) is 'based on an evaluation[,]' allows for 'a relatively normal life[,]' and as a result the parolee or petitioner 'relied on at least an implicit promise' that the parole or decision not to detain will be revoked only if he fails to live up to the applicable 'conditions.'" (first alteration added) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)); *Orozco-Salazar v. Warden Desert View Facility Adelanto*, 2026 U.S. Dist. LEXIS 191637, 2026 WL 2497334, at *3 (C.D. Cal. Aug. 25, 2026) ("District courts generally reason that 'the government's knowing decision not to detain an individual creates a liberty interest in their continued release.'") (quoting *Anderson v. Chernut*, 2026 U.S. Dist.

LEXIS 62410, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026)), and citing similar cases); *Garcia v. Albarran*, 2026 U.S. Dist. LEXIS 145262, 2026 WL 1879641, at *4 (N.D. Cal. June 30, 2026) ("Courts . . . apply this principle to individuals 'who have never been in immigration custody,' finding that 'years of deliberate acquiescence by' the government may give rise to a liberty interest in being free from detention") (quoting *Abdeltawab v.* Armant, 2026 U.S. Dist. LEXIS 87515, 2026 WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026), and citing similar cases); *Zhou v. Warden of the Cal. City Immigration Processing Ctr*., 2026 U.S. Dist. LEXIS 204786, 2026 WL 2666139, at *4 (E.D. Cal. Sept. 10, 2026) ("This Court further observes that courts have found protected liberty interests where the government knew of the noncitizen's continued presence in the United States and yet took no action to detain the noncitizen for months or years after their visa expired.") (citing cases).

45. *Gui Lyu v. Janecha*, No. 5:26-cv-05051-MBK, 2026 U.S. Dist. LEXIS 207468, at *6-7 (C.D. Cal. Sep. 13, 2026) is a nearly identical recent case involving a visa overstay and asylum applicant. The Honorable Michael B. Kaufman rejected Respondents' contention that an immigration court bond hearing mooted the petitioner's habeas claims and explained:

> Courts have extended these [due process] principles to cases in which a noncitizen had not been released from immigration custody previously, but where the record indicates that the Government 'deliberate[ly] acquiesce[d]' in the noncitizen's remaining at liberty in the United States. *See Martinez v.*

> *Acting Warden of the Adelanto Det. Ctr.*, No. 5:26-cv-02635-ACCV, 2026 U.S. Dist. LEXIS 176507, 2026 WL 2262269, at *5 (C.D. Cal. Aug. 5, 2026); *Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 U.S. Dist. LEXIS 141808, 2026 WL 1837413 (E.D. Cal. June 25, 2026) (holding that a visa overstayer with a pending asylum application 'possesses a constitutionally protected liberty interest that the Government cannot extinguish without affording pre-deprivation process'); *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 U.S. Dist. LEXIS 39213, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (concluding that noncitizen who overstayed nonimmigrant visa and entered removal proceedings, but was never detained, had a protected liberty interest in remaining free). This case is comparable. Petitioner became subject to detention under 8 U.S.C. § 1226(a) after her B-2 visa expired, but the Government elected not to detain her and instead granted her employment authorization while her asylum case remains pending. For the past three years, Petitioner has proceeded with her asylum claims, remained gainfully employed, deepened her ties in the community, and has had no arrests or convictions. Throughout this time period, the Government knew exactly where Petitioner was but permitted her to remain at liberty. Under these circumstances, the Court finds that Petitioner's detention without a pre-deprivation hearing or a material change in circumstances violates due process.

46. Petitioner legally arrived in the United States and applied for asylum in 2024. LeRoy Decl. ¶¶1, 5. She participated in her community, was studying to be a Pilates instructor, and has a U.S-citizen fiancé. Exh. D; LeRoy Decl. ¶¶ 7, 8.

47. The expiration of Petitioner's visa does not eliminate her vested protected liberty interest established through several years living, working and building her future in the United States with her U.S. citizen fiancé without the knowledge and consent of the government. Exhs. B, D; LeRoy Decl. ¶¶ 5, 7, 8, 9. Respondents' acquiescence in Petitioner's freedom from detention enabled Petitioner to form enduring attachments of normal life and gave her a protected liberty interest under the Due Process Clause that persisted beyond the expiration of

his visa. "Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).

48. Petitioner has established strong connections to the United States and her community. Exh. D; LeRoy Decl. ¶¶ 7, 8. She has no criminal charges or history. LeRoy Decl. ¶¶ 12, 13. A consideration of all these factors supports a finding that Petitioner has a "powerful interest . . . in his continued liberty." *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 U.S. Dist. LEXIS 133521, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) (finding liberty interest "powerful" where petitioner was living with family out of custody for only two years).

49. Petitioner has a clear protected liberty interest in remaining out of immigration custody which, like the release or parole of a noncitizen, did not expire with the expiration of her visa. *See, e.g., Simon v. Warden, Cent. Valley Annex,* No. 1:26-cv-05030- EJD, 2026 U.S. Dist. LEXIS 152152, at *4-5 (E.D. Cal. July 9, 2026); *Castillo v. Warden of the Golden State Annex*, No. 1:26-cv-04773-EJD, 2026 U. S. Dist. LEXIS 150716 (E.D. Cal. July 8, 2026)*; Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093-94 (E.D. Cal. 2025); *Hortua v. Chestnut et al.*, No. 1:25-cv-01670-TLN-JDP, 2025 U.S. Dist. LEXIS 254930, 2025 WL 3525916, at *3 (E.D. Cal. Dec. 9, 2025); *Armando Modesto Estrada-Samayoa v. Orestes Cruz et al.*, No. 1:25-CV-01565-EFB, 2025 U.S. Dist. LEXIS 230807, 2025 WL 3268280, at *4 (E.D. Cal.

Nov. 24, 2025) (collecting cases); *Arzate v. Andrews*, Slip Copy, 2025 WL 2230521 (E.D. Cal. Aug. 4, 2025); *Subero v. Johnson*, No. 5:26-cv-02163-DFM, 2026 LX 248307 (C.D. Cal. May 7, 2026); *Guerreo v. Semaia*, No. 5:26-cv-01624-DFM, 2026 LX 221194 (C.D. Cal. Apr. 17, 2026); *Wang v. Warden of Desert View Annex Det. Facility*, No. 5:26-cv-01595-DFM, 2026 U.S. Dist. LEXIS 96831 (C.D. Cal. Apr. 24, 2026); *You v. Bondi*, No. 5:26-cv-00967-SB-ADS, 2026 U.S. Dist. LEXIS 53501(C.D. Cal. Mar. 10, 2026); *Hasratyan v. Bondi*, No. 26-210, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026); *Morales v. Warden, Adelanto Det. Facility*, No. 5:26-cv-01786-MBK, 2026 LX 181355 (C.D. Cal. Apr. 17, 2026); *Sotomayor v. Bondi*, No. EDCV 25-02939-CV-SSCx, 2025 WL 3691398, at *3 (C.D. Cal. Nov. 14, 2025); *G.S. v. Semaia*, No. EDCV 26-00858-KK-MARx, 2026 WL 638870, at *6 (C.D. Cal. Mar. 3, 2026); *Yataco v. Warden, Adelanto Det. Facility*, 2025 WL 4065463, at *6 (C.D. Cal. Dec. 26, 2025); *Castellon v. Kaiser*, No. 1:25-CV-00968, 2025 U.S. Dist. LEXIS 157841, 2025 WL 2373425, at *10 (E.D. Cal. Aug. 14, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025); *OMER G.G. v. Kaiser*, No. 1-25-cv-01471-KES-SAB, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025); *Faqeri v. Scott*, No. 2:26-cv-00003-JHC, 2026 WL 194475, at *3 (W.D. Wash. Jan. 26, 2026) ("Just because Petitioner [as a noncitizen] may have a lesser liberty interest compared to others does not mean that Petitioner possesses no liberty interest in his continued freedom nor that his liberty interest was extinguished

when his parole expired ....") (citations omitted); *Mahib Dieng v. Hermosillo*, 2026 WL 411857, No. 2:26-cv-00190-LK (W.D. Wash. Feb 13, 2026); *D.L.C. v. Wofford*, ___ F. Supp. 3d ___, 2026 WL 1456456, at *4 (E.D. Cal. Jan. 20, 2026); *Quiroga-Chaparro v. Warden of the Golden State Annex Det. Facility*, No. 1:25-CV-1731 AC, 2025 WL 3771473, at *4 (E.D. Cal. Dec. 31, 2025); *Torres Ferrera v. Scott*, No. 2:26-cv-00583-TL, 2026 WL 776145, at *4 (W.D. Wash. Mar. 19, 2026).

**B. *Mathews***

50. Once a court has found that a noncitizen has a liberty interest in continued release, the Court must next determine what procedural protections the government must afford the noncitizen before depriving her of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context). Under that test, the court weighs: (1) the private interest affected; (2) the risk of erroneous deprivation and probable value of procedural safeguards; and (3) the government's interest. *Mathews v. Eldridge*, 424 U.S. at 335.

51. With respect to the first *Mathews* factor, Petitioner has a strong private interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

Here, Petitioner entered the United States with a visa in 2021. The government was aware of her presence then and when she applied for asylum. Exhs. A, B; LeRoy Decl. ¶¶ 1, 5.

52. This Court should find that Petitioner maintains a liberty interest in her continued release or freedom from detention by virtue of Respondents' acquiescence in his continued freedom from custody even after her visa expired. *See Anderson v. Chernut*, No. 1:26-CV-01960-DAD-CKD, 2026 U.S. Dist. LEXIS 62410, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (explaining "that the government's knowing decision not to detain an individual creates a liberty interest in their continued release" and "[e]ven though petitioner's parole authorization expired, petitioner maintains her liberty interest in continued release"); *Rocha Ramirez v. Warden*, No. 1:26-CV-02544-DAD-AC, 2026 U.S. Dist. LEXIS 88201, 2026 WL 1078250, at *1 (E.D. Cal. Apr. 21, 2026) (applying *Anderson v. Chernut* where petitioner entered the United States in 2006 on a valid visa that expired in 2011); *D.L.C. v. Wofford*, No. 1:25-cv-01996-DC-JDP, 820 F. Supp. 3d 1106, 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) ("[N]umerous courts in the Ninth Circuit have found that when a noncitizen is paroled under that section, his liberty interest does not expire along with his parole.") (collecting cases); *Amro Yousry Abdeltawab v. Armant*, No. EDCV 26-01520, 2026 U.S. Dist. LEXIS 87515, 2026 WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026) (finding a liberty interest for petitioners who "have never been in immigration

custody in the first place due to years of deliberate acquiescence by [the government]"); *Kamal Raj v. Mullin*, No. C26-1323, 2026 U.S. Dist. LEXIS 104957, 2026 WL 13000423, at *3 (W.D. Wash. May 12, 2026) (collecting decisions throughout the Ninth Circuit holding that when a noncitizen's valid immigration status expires and "the Government makes no effort to re-detain the noncitizen after expiration despite opportunities to do so," the noncitizen acquires a liberty interest in freedom from physical detention); *Gui Lyu v. Janecha*, No. 5:26-cv-05051-MBK, 2026 U.S. Dist. LEXIS 207468, at *6-7 (C.D. Cal. Sep. 13, 2026). Respondents had every opportunity to arrest Petitioner when her visa expired, and when she applied for asylum in 2024 - but failed to do so. Moreover, Petitioner has no criminal record. Thus, the first *Mathews* factor weighs in Petitioner's favor.

53. The second factor, the risk of erroneous deprivation, also weighs in Petitioner's favor. The risk of erroneous deprivation is high where a petitioner does not receive a pre-detention hearing to determine whether there is a valid basis for detention. *See Anderson v. Chernut*, No. 1:26-CV-01960-DAD-CKD, 2026 U.S. Dist. LEXIS 62410, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026). Petitioner "was entitled to both notification of revocation and the reasoning for revocation, if not also an opportunity to be heard and contest the determination." *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1165 (S.D. Cal. 2025); *see* 8 C.F.R. § 212(e)(2)(i) (requiring written notice of termination of parole); *see also* 8 C.F.R. § 287.8(2) (requiring a

warrant for arrest unless the person is likely to escape prior to arrest) and 8 C.F.R. § 287.3 (requiring examination of the arrestee and notification of the reason for his or her arrest when a person is arrested without a warrant).

54. Petitioner was arbitrarily taken into ICE detention without any pre-detention process whatsoever and in violation of the INA and its implementing regulations. LeRoy Decl. ¶¶ 10, 13. When the government fails to follow its own regulations, fails to provide any sort of notice regarding the reason for a person's detention, and fails to provide a pre-deprivation hearing, the risk of erroneous deprivation is high. *See Anderson v. Chernut*, No. 1:26-CV-01960-DAD-CKD, 2026 U.S. Dist. LEXIS 62410, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (noting the high risk of erroneous deprivation when the petitioner did not receive a pre-detention bond hearing); *H.J.G.G. v. Wofford*, No. 1:25-CV-01718-JLT-EPG, 2025 U.S. Dist. LEXIS 267757, 2025 WL 3761803, at *7 (E.D. Cal. Dec. 30, 2025), *report and recommendation adopted*, No. 1:25-cv-01718-JLT-EPG, 2026 WL 320331 (E.D. Cal. Feb. 6, 2026) (noting the importance of a hearing before a person is deprived of their liberty interest).

55. The facts of this case illustrate very well why "the risk of erroneous deprivation" requires a pre-deprivation hearing. In this case, Petitioner was arrested at the airport and detained for no articulated rationale, other than ICE's arbitrary decision to "expedite" her asylum case. LeRoy Decl. ¶ 10. It appears that she was

selected for arrest not for any reason related to flight risk or danger, but solely because of her Latino ethnicity. The second *Mathews* factor, the risk of erroneous deprivation, clearly weighs in Petitioner's favor.

56. Finally, while the government has an interest in enforcing its immigration laws, the government's interest in detaining Petitioner without a pre-deprivation hearing is low. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 U.S. Dist. LEXIS 133521, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). As "many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Hasratyan v. Bondi et al.*, No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026).

## **FACTUAL ALLEGATIONS**

57. On January 20, 2025, the day that President Trump took office for his second term, he signed Executive Order 14159, "Protecting the American People Against Invasion," the purpose of which was "to faithfully execute the immigration laws against all inadmissible and removable aliens, particularly those aliens who threaten the safety or security of the American people." Exec. Order No. 14,159, 90 C.F.R. § 8443 (Jan. 20, 2025). The order directed the Secretary of Homeland Security to take various actions "to ensure the efficient and expedited removal of aliens from the United States." *Id.* Since mid-May 2025, DHS has engaged in an

aggressive enforcement campaign targeting noncitizens for arrest and detention, regardless of their immigration status. This coordinated operation is aimed at dramatically accelerating deportations by arresting people at courthouses and at ICE check-in appointments and thereafter claiming without a proper basis that they are subject to mandatory, indefinite detention.

58. DHS's well-documented aggressive and often unlawful tactics appear to be motivated by the current administration's imposition of a daily quota of 3,000 ICE arrests.[4] In part as a result of this campaign, ICE's unlawful arrest of noncitizens has increased dramatically since before January 2025.[5] The death rate in

---

[4] *See* Rebecca Santana, *ICE, the agency central to Trump's mass deportation plans, undergoes a shakeup*, ASSOCIATED PRESS (May 30, 2025), https://perma.cc/3RL3-Y9ZU ("White House deputy chief of staff Stephen Miller said on Fox News earlier this week that the administration was setting a goal of 3,000 arrests by ICE each day and that the number could go higher.")

[5] *See* Ted Hesson & Kristina Cooke, *ICE's Tactics Draw Criticism as it Triples Daily Arrest Targets*, REUTERS, June 10, 2025, https://www.reuters.com/world/us/ices-tactics-draw-criticism-it-triples-daily-arrest-targets-2025-06-10/; Alayna Alvarez & Brittany Gibson, *ICE Ramps Up Immigration Arrests in Courthouses Across the U.S.*, AXIOS, June 12, 2025, https://www.axios.com/2025/06/12/ice-courthouse-arrests-trump.
José Olivares & Will Craft, *ICE Arrests of Migrants with No Criminal History Surging under Trump*, THE GUARDIAN, June 14, 2025, https://www.theguardian.com/us-news/2025/jun/14/ice-arrests-migrants-trump-figures; Hamed Aleaziz, Luis Ferré-Sadurní, & Miriam Jordan, *How ICE Is Seeking to Ramp Up Deportations Through Courthouse Arrests*, N.Y. TIMES, May 30, 2025, https://www.nytimes.com/2025/05/30/us/politics/ice-courthouse-arrests.html; Nate Raymond, Kristina Cooke and Brad Heath, Courts Have Ruled 4,400 Times That ICE Jailed People Illegally. It Hasn't Stopped, REUTERS, February 14, 2026, https://www.reuters.com/legal/government/courts-have-ruled-4400-times-that-ice-jailed-people-illegally-it-hasnt-stopped-2026-02-14/; *see also* Mattathias Schwartz, Zach Montague and Ernesto Londoño, Judges Grow Angry Over Trump Administration Violating Their Orders, N.Y. TIMES, Feb. 23, 2026, https://www.nytimes.com/2026/02/23/us/politics/judges-contempt-immigration-trump.html; Kyle Cheney, 'ICE Will Comply': Top Minnesota Judge Threatens Criminal Contempt For Continued Defiance, POLITICO, Feb. 26, 2026 https://www.politico.com/news/2026/02/26/ice-minnesota-judge-criminal-contempt-00803285.
*See* Ted Hesson & Kristina Cooke, ICE's Tactics Draw Criticism as it Triples Daily Arrest Targets, REUTERS, June 10, 2025, https://www.reuters.com/world/us/ices-tactics-draw-criticism-it-triples-daily-arrest-targets-2025-06-10/; Alayna Alvarez & Brittany Gibson, ICE Ramps Up Immigration Arrests in Courthouses Across the U.S., AXIOS, June 12, 2025,

ICE detention is also historically high[6] and Petitioner has health issues that require medication that is not consistently provided to her at Adelanto. LeRoy Decl. ¶ 14.

59. The government has not alleged that Petitioner has a criminal record, is a national security risk, or a threat to the community. LeRoy Decl. ¶ 13. Although the IJ concluded that Petitioner was a flight risk, that conclusion was constitutionally deficient because no burden of proof was mentioned and no evidence was cited to support such a finding. *See* the Order. Petitioner's arrest and detention on September 22, 2026 violated her rights under the Due Process Clause to the Fifth Amendment, the Fourth Amendment to the U.S. Constitution, and the Immigration and Nationality Act, 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii), prohibiting warrantless arrests without reason to believe an individual is a flight risk.

---

https://www.axios.com/2025/06/12/ice-courthouse-arrests-trump.
José Olivares & Will Craft, ICE Arrests of Migrants with No Criminal History Surging under Trump, THE GUARDIAN, June 14, 2025, https://www.theguardian.com/us-news/2025/jun/14/ice-arrests-migrants-trump-figures;
Hamed Aleaziz, Luis Ferré-Sadurní, & Miriam Jordan, How ICE Is Seeking to Ramp Up Deportations Through Courthouse Arrests, N.Y. TIMES, May 30, 2025, https://www.nytimes.com/2025/05/30/us/politics/ice-courthouse-arrests.html.

[6] *See* Rebecca Kavalauskas, *Report Documents Sharp Rise in Deaths in ICE Custody during Trump's Second Term*, VANGUARD NEWS GROUP, July 13, 2026, https://davisvanguard.org/2026/07/ice-custody-deaths-reach-record/ ("Fifty-two people died in U.S. Immigration and Customs Enforcement custody during the first 500 days of President Donald Trump's second term, according to a report by Physicians for Human Rights that found the mortality rate has reached its highest level in more than a decade.")

60. When ICE acts with impunity as the police, judge and jury, what could possibly go wrong?[7] The arbitrary and erroneous deprivation of Petitioner's liberty is one thing that went very wrong in her case. *See* LeRoy Decl. ¶ 10. Thus, under *Mathews* and the Due Process Clause, this Court should grant the Petition and order Petitioner's immediate release from unlawful ICE custody.

61. While Respondents' war against the rights of noncitizens in the United States rages on, as a result of her arbitrary arrest and detention, Petitioner is suffering irreparable and ongoing harm each day that she remains unlawfully detained. LeRoy Decl. ¶ 14; *see also Rosales-Mireles v. United States*, 585 U.S. 129, 139 (2018) (recognizing the inherent harm in *any* period of incarceration). Petitioner has migraines and is suffering emotional distress at Adelanto. LeRoy Decl. ¶ 14.

## FIRST CLAIM FOR RELIEF

### Violation of the Fifth Amendment to the United States Constitution

### (Substantive Due Process—Detention)

62. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

63. The Due Process Clause of the Fifth Amendment protects all

[7] *See* Nicole Chavez, Karina Tsui, *4 People Have Been Killed This Year In Shootings By Federal Agents Linked To Trump's Immigration Crackdown,* CNN, July 13, 2026, https://www.cnn.com/us/trump-immigration-crackdown-shootings (documenting what appears to be the 2026 summary execution of several unarmed individuals without cause by trigger happy ICE agents).

"person[s]" from deprivation of liberty "without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Immigration detention is constitutionally permissible only when it furthers the government's legitimate goals of ensuring the noncitizen's appearance during removal proceedings and preventing danger to the community. *See id.*

64. On September 22, 2026, Petitioner was not, and is not presently, a flight risk or danger to the community. Respondents' detention of Petitioner is therefore unjustified and unlawful. Accordingly, Petitioner is being detained in violation of the Due Process Clause of the Fifth Amendment.

65. Moreover, Petitioner's detention is punitive as it bears no "reasonable relation" to any legitimate government purpose. *Id.* (finding immigration detention is civil and thus ostensibly "nonpunitive in purpose and effect"). Here, the purpose of Petitioner's detention appears to be "not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate "for other reasons"—namely, to achieve arbitrary DHS quotas. *See Demore v. Kim*, 538 U.S. at 532–33 (Kennedy, J., concurring).

## SECOND CLAIM FOR RELIEF

### Violation of the Fifth Amendment to the United States Constitution

**(Procedural Due Process—Detention)**

66. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

67. As part of the liberty protected by the Due Process Clause, Petitioner has a weighty liberty interest in avoiding incarceration after enjoying her freedom from her arrival in 2022 to her arrest in 2026 - the period when Respondents decided *not* to detain her. *See Young v. Harper*, 520 U.S. 143, 146–47 (1997); *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 482–83 (1972); *see also Gui Lyu v. Janecha*, No. 5:26-cv-05051-MBK, 2026 U.S. Dist. LEXIS 207468, at *6-7 (C.D. Cal. Sep. 13, 2026).

68. Petitioner's detention was unlawful such that she should not be required to again seek release on bond. The controlling precedent from this District, the Ninth Circuit and Supreme Court makes it abundantly clear that the post-detention process Petitioner received and will receive is no substitute for the *pre-detention* process owed her. *See Hasratyan v. Bondi*, No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026).

69. "In the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez*, 872

F.3d at 990 (cleaned up); *Zinermon*, 494 U.S. at 127 (Generally, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."). In the immigration context, for such hearings to comply with due process, the government must bear the burden to demonstrate, by clear and convincing evidence, that the noncitizen poses a flight risk or danger to the community. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *see also Martinez v. Clark*, 124 F.4th 775, 785, 786 (9th Cir. 2024).

70. The conduct of an immigration court bond hearing and the resulting Order premised on an incorrect legal standard—apparently imposing the burden of proof on Petitioner at the bond hearing—further violated Petitioner's procedural due process rights.

71. Petitioner has a profound personal interest in her liberty that vested over the years between 2021 and 2026 when Respondents elected not to arrest or detain Petitioner. Because she received no procedural protections prior to her arrest and detention on September 22, 2026, the risk of erroneous deprivation is particularly high.

72. Petitioner's arbitrary arrest and detention on September 22, 2026 without notice or a pre-deprivation hearing violated due process. Respondents waited until September 22, 2026 to arrest and detain her without any pre-detention notice or process whatsoever.

73. Respondents detained Petitioner without notice, any explanation for her detention, and no opportunity to contest her detention before a neutral adjudicator before being taken into custody.

**THIRD CLAIM FOR RELIEF**

**Violation of the Fourth Amendment to the United States Constitution**

**(Unlawful Arrest)**

74. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

75. The Fourth Amendment protects the right of persons present in the United States to be free from unreasonable seizures by government officials.

76. ICE officers effectuated an unlawful arrest of Petitioner without producing a warrant apparently on the basis of her Latino appearance and ethnicity. In placing someone under arrest without a warrant, an immigration officer must have probable cause that a person is "likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995); *see also B.D.A.A. v Bostock*, No. 25-2062, 2025 U.S. Dist. LEXIS 250425, 2025 WL 3484912, at *7 (D. Or. Dec. 4, 2025) ("Respondents do not say that they conducted a flight risk assessment. And they provide no facts or documentation to discern any basis to make such assessment," but the petitioner was nonetheless arrested without a

warrant); *A.B.D. v. Wamsley*, No. 25-2014, 2026 U.S. Dist. LEXIS 11720, 2026 WL 178306, at *1 (D. Or. Jan. 22, 2026) ("The parties do not dispute that ICE officers did not make an individualized assessment of each Petitioners' flight risk as required to make a warrantless arrest under 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii).").

77. A stop must be supported by at least reasonable suspicion. *See Kansas v Glover*, 589 U.S. 376, 380 (2020). To justify a stop, "[a]n officer cannot rely only upon generalizations that would cast suspicion on large segments of the law-abiding population." *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006). The Supreme Court held that these requirements apply in the immigration context, when officers seek to enforce the INA. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). *Brignoni-Ponce* held that mere belief that a person is of Mexican descent, is sufficient to "justify neither a reasonable belief that they were aliens, nor a reasonable belief that the car concealed other aliens who were illegally in the country." 422 U.S. at 886.

78. There was no probable cause, reasonable suspicion or other constitutionally sufficient basis for arresting Petitioner without a warrant on September 22, 2026. Respondents' racial profiling to arrest Petitioner on September 22, 2026 violated the Fourth Amendment.

79. Petitioner's arrest and detention by Respondents on the basis of Petitioner's race and ethnicity without reasonable suspicion that she violated any law constituted an unreasonable search and seizure in violation of the Fourth Amendment.

## FOURTH CLAIM FOR RELIEF

### Violation of the Immigration and Nationality Act

### (Unlawful Arrest)

80. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

81. Respondents violated Petitioner's rights under 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) prohibiting warrantless arrests without reason to believe an individual is a flight risk.

82. On September 22, 2026, there was no reason to believe that Petitioner presented a flight risk. A person returning home to Anaheim with her U.S. citizen fiancé did not suddenly become a flight risk. The ICE agent who arrested Petitioner made it clear that she was being detained because ICE wanted to "expedite" her asylum case rather than for any legitimate purpose relating to flight risk.

83. Petitioner's arrest and detention by Respondents on September 22, 2026 without any reason to believe that she presented a flight risk and without a warrant violated the INA and its implementing regulations, 8 U.S.C. § 1357(a)(2)

and 8 C.F.R. § 287.8(c)(2)(ii).

**<u>FIFTH CLAIM FOR RELIEF</u>**

**Violation of the Administrative Procedure Act**

84. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

85. The APA prohibits federal action that is "in excess of statutory jurisdiction, authority or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), and "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id*. § 706(2)(A).

86. The government's arbitrary quota-driven policy of arresting noncitizens without reason to believe that they are a flight risk and without producing a warrant is "in excess of statutory jurisdiction, authority or limitations, or short of statutory right" under 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii). The government has provided no reasoned or adequate explanation for the policy, which is a dramatic shift from recent and longstanding agency policy and practice.

87. Respondents' policy of detaining individuals such as Petitioner without an individualized explanation for the basis of their arrest and detention violates the Administrative Procedure Act. *See Y-Z-H-L v. Bostock*, 2025 WL 1898025, at *10–12 (D. Or. July 9, 2025) (holding that noncitizens must be given written notice of the impending revocation or loss of liberty, which must include a

cogent description of the reasons supporting the revocation decision and finding that the absence of such description resulted in a violation of the Administrative Procedure Act). Such policy is arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A)).

88. Petitioner's arbitrary arrest and detention without individualized suspicion, cause, notice or a pre-deprivation hearing before a neutral arbiter pursuant to the government's policy constitute final agency actions that violate the Administrative Procedure Act. *See* 5 U.S.C. § 706(2).

## PRAYER FOR RELIEF

Petitioner respectfully requests that this Court:

1. Assume Jurisdiction in this matter;
2. Issue a Writ of Habeas Corpus ordering Respondents to immediately release Petitioner from custody and return to her all documents, her phone and identification cards and other items confiscated by Respondents upon or in connection with her detention;
3. Declare that (i) Petitioner's arrest and detention violated the Due Process Clause of the Fifth Amendment, the Fourth Amendment, the Immigration and Nationality Act, 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) and the Administrative Procedure Act and (ii) the conduct of the bond hearing resulting in the Order violated Petitioner's rights the Due Process Clause of the Fifth Amendment;

4. Enjoin Respondents from re-arresting and re-detaining or imposing onerous conditions of release, such as electronic monitoring, on Petitioner in violation of her constitutional rights and the INA and specifically, without an individualized pre-deprivation notice and hearing at which Respondents must prove by clear and convincing evidence that Petitioner presents a flight risk or danger to others at the time of her re-arrest or the imposition of additional conditions of release in accordance with the Due Process Clause, the INA and its implementing regulations;

5. Award Petitioner her costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act and 28 U.S.C. § 2412 or pursuant to the common law doctrine of bad faith; and

6. Grant such further relief as this Court deems just and proper.

Date: October 25, 2026

Respectfully submitted,

/s/ *Carrie LeRoy*
Carrie LeRoy
Pro Bono Attorney for Petitioner

**VERIFICATION**

I, Carrie LeRoy, declare as follows:

I am an attorney admitted to practice law in the State of California. Because many of the allegations of the Petition for Writ of Habeas Corpus require a legal knowledge not possessed by Petitioner, I am making this verification on her behalf. I have read the foregoing Petition for Writ of Habeas Corpus and know the contents thereof to be true to my knowledge, information, or belief.

I certify under penalty of perjury that the foregoing is true and correct and that this declaration was executed on October 25, 2026.

/s/ *Carrie LeRoy*
Carrie LeRoy
Pro Bono Attorney for Petitioner